[Civ. No. 5165. Fourth Dist. Aug. 1, 1956.]

HENRY ZEPEDA, Appellant, v. INTERNATIONAL HOD-CARRIERS' BUILDING AND COMMON LABORERS' UNION, LOCAL 89 (an Unincorporated Association), Respondent.

Richard E. Adams for Appellant.

Walter Wencke for Respondent.

GRIFFIN, J.—Petitioner and appellant, a member of defendant and respondent International Hodcarriers' Building and Common Laborers' Union, Local 89 (hereinafter referred to as the "Union"), an unincorporated labor union affiliated with the International Hodcarriers', Building and Common Laborers' Union of America, brought this proceeding against said Union to compel it to post petitioner's name in the hiring hall of said Union and to dispatch petitioner to prospective employers from such lists in the same manner as all other members of said Union are so dispatched. A separate prayer seeks damages against it for $4,920 damages for this claimed wrongful action.

In said petition it is alleged that the Union, in behalf of its members, had entered into various collective bargaining contracts with employers; that under the terms of these contracts the Union operates a hiring hall; that calls are received for workmen from various employers and members seeking employment are dispatched according to the names posted; that since June 24, 1954, the Union wrongfully refused to dispatch petitioner to such employers; that as a member of that Union he has been unable to obtain employment since that date, to his damage.

Thereafter, the Union filed its answer admitting that the written contracts between the Union and the employers contained the provisions claimed but that it also contains a provision that the Union shall furnish "qualified, competent and skilled workmen to contractors" and sets up the contract as an exhibit by reference. The Union admits petitioner is not being dispatched from the hiring hall because he was born in 1882 and was then 73 years of age and unable to perform the heavy work of a plaster tender; that within the six months' period prior to June 24, 1954, two employers requested the Union to no longer refer petitioner to them; and that petitioner was not a qualified, competent or skilled workman. It is then alleged, on information and belief, that petitioner is epileptic and otherwise medically unfit and a hazard to employers; that in June, 1954, petitioner was given per-

mission by the Union to solicit his own employment and if a job was found, he would be cleared to that job by the Union.

It is then alleged, as affirmative defenses, that under the Union's constitution and that of the International Union above mentioned (copies of which are set up in the verified answer by reference) petitioner did not first exhaust his remedy within the structure of the local Union and International Union; that petitioner filed charges against respondent Union on July 21 and July 28, 1954, with the National Labor Relations Board asserting this same claim; that said Board assumed jurisdiction over the parties of the subject matter and petitioner, respondent Union and the regional director of the National Labor Relations Board, on September 15, 1954, entered into a "tripartitle" written settlement agreement. This agreement, attached to the answer, provided that "contingent upon compliance with the terms and provisions hereof, no further action shall be taken in the above case." It then alleges that the National Labor Relations Board has not relinquished jurisdiction over the parties or subject matter and claims that the superior court has no jurisdiction to act at this time. As a further affirmative defense, respondent sets up the minutes of the executive board of the Union pertaining to a hearing had before it on request of the petitioner on June 28, 1954. It recites the reasons for disallowing petitioner to register in the hiring hall and the motion granting the exception indicated. The answer further alleges that petitioner, under the rules of his membership, is bound to obey such rules and regulations and the superior court has no power to bestow additional rights to petitioner or to deprive respondent of its rights to govern itself.

There was no denial of the claimed affirmative defenses set forth in the verified answer which set up the written documents. Accordingly, the genuineness and due execution of such instruments are deemed admitted. (Code Civ. Proc., § 448.)

On April 20, 1955, respondent moved for summary judgment on the ground that the superior court, accordingly, had no jurisdiction, that petitioner was not shown to be qualified, and that he failed to exhaust his remedies within the Union.

On April 28, 1955, petitioner filed a motion to strike out respondent's answer and for summary judgment in petitioner's favor on the ground the answer had no merit. He cites such authorities as *Weber* v. *Marine Cooks' & Stewards' Assn.*, 93 Cal.App.2d 327 [208 P.2d 1009]; *Harris* v. *National*

*Union etc. Cooks & Stewards,* 98 Cal.App.2d 733 [221 P.2d 136]; *Smith* v. *Kern County Medical Assn.,* 19 Cal.2d 263 [120 P.2d 874]; and *Cason* v. *Glass Bottle Blowers Assn.,* 37 Cal.2d 134 [231 P.2d 6, 21 A.L.R.2d 1387]. The motion was properly denied.

After a full consideration of the pleadings and argument had, the trial court granted respondent's motion for summary judgment and recited therein that the proceedings had before the executive board of the Union was a substantial compliance by the Union with the provisions of its constitution; that petitioner failed to exhaust his remedies within the Union; and that petitioner is not entitled to the writ and should take nothing by his petition.

The main claim on this appeal is that respondent violated its own constitution by its actions in not treating all of its members on an equal basis; that, in effect, petitioner was deprived of the emoluments or right of membership in the Union by not having steady employment rights; that to expel a member, charges must be filed in writing against him, setting forth the grounds and seven days' notice given him to appear and defend the charges; that this procedure was not followed by the Union and, accordingly, it is claimed that the theory of exhaustion of remedies does not apply.

The written minutes of the meeting, set up in the verified answer, do not show that any charges were ever brought against petitioner or that he was ever expelled from the Union. The charges, if any, were orally made by petitioner against the Union in general. It relates ''Brother Zepeda stated that he would like to know if the Executive Board could help him in getting steadier employment . . . ; that he had been sent out on the one, two and three days jobs only and that he could not support his family on that basis; that this type of employment was forcing him to withdraw from the Local''; that a check of his employment card showed he had been sent to 38 jobs in a period of 18 months and many were big jobs; that Zepeda had retired from the calling six years before and after a period of time returned to the Local; that Zepeda was one of the few members allowed by the body, through a special motion, to be cleared through the hall and solicit work on his own.

Mandate, and other extraordinary writs, under certain conditions, have been used to compel a trade union to allow a member of the union to have equal rights with others.

(*Otto* v. *Journeyman Tailors' P. & B. Union,* 75 Cal. 308 [17 P. 217, 7 Am.St.Rep. 156]; *James* v. *Marinship Corp.,* 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900].)

■ When a voluntary association has violated its own laws and has arbitrarily violated a member's property right, the rule of exhaustion of remedies in administrative tribunals has not always been resorted to before a direct resort to the court, but, as is said in *Local No. 7 of Bricklayers', etc. Union* v. *Bowen,* 278 F. 271, at page 274-275:

". . . (t)he field of judicial interference with the actions of voluntary, nonpublic bodies, as to controversies between their members as to the method and manner in which rights of membership may be maintained and continued, is, and should be, a very narrow one, and that its boundaries should be maintained with the utmost care, so that only upon the clearest kind of showing, either that the Constitution and rules are violated by the decision of the tribunals set up by them, or that the remedies provided by the parties in their agreements for appeal from or review of the decisions of their own constituted tribunals are nonexistent or unreasonable, should the courts permit their jurisdiction to be invoked. . . ."

■ This conclusion is fortified by the late decision in *Holderby* v. *International Union etc. Engineers,* 45 Cal.2d 843 [291 P.2d 463], which, in effect, modified, if not over-ruled some of the holdings in the earlier cases upon which petitioner relies pertaining to the rule of exhaustion of remedies. It is there held, quoting from syllabus 3:

"Violation of other laws and wrongs done within an organization are intended to be conciliated and corrected by the appellate machinery provided therein if properly invoked by an aggrieved party and applied by the organization, and if recourse to such appellate machinery is not sought an aggrieved party foregoes his right to a judicial review regardless of the breach of its own rules by the organization in causing the grievance in the first instance."

A review of the recognized exceptions to the requirement of the exhaustion of remedies fails to reveal one in which petitioner's case would fall. ■ By the terms of the collective bargaining agreement pleaded in the answer:

"The contractor shall first call upon the union for such men as he may from time to time need, and the union shall immediately furnish to the contractor the required number of qualified and competent workmen and skilled mechanics of the classifications needed by the contractor."

In reaching agreements with employers, unions accept certain responsibilities and limitations on the freedom of behavior of their members. The employer expects that quality and output standards will be maintained. He depends on the union's active help in enforcing the agreement. It is bound as a matter of contract with employers to establish a hiring hall for qualified workmen.

It appears from the uncontroverted provisions of the pleadings that petitioner was not being charged with any offense against the Union; that if there was any sufficient charge at all requiring action, it was directed against the executive board of respondent Union, and, accordingly, petitioner should not be heard to complain as to proper notice where he was the instigator of the charges. It further affirmatively appears that petitioner did not first exhaust his remedies in the administrative and appellate tribunals of the Union and the trial court was justified in so holding.

The judgment is affirmed.

Barnard, P. J., and Mussell, J., concurred.