[Civ. No. 5295. Fourth Dist. Dec. 18, 1956.]

THOMAS P. DOWNIE, Appellant, v. WILLIAM BRUNTON et al., Respondents.

Charles H. Carter for Appellant.

Algerdas N. Cheleden and Ernest A. Kessler for Respondents.

GRIFFIN, J.—Plaintiff and appellant was employed by Kaiser Steel Company (hereinafter referred to as Kaiser) in the early part of April, 1952, and was then a member of defendants and respondents United Steel Workers of America, Local 2869 and United Steel Workers of America. He was discharged by Kaiser on April 19, 1952. Defendant Brunton was an agent of the other defendants, had office space, and as such, maintained a grievance room at Kaiser's plant. Plaintiff was on a so-called "probationary status" to him.

Plaintiff's complaint is in three counts, (1) in tort alleging that defendants wrongfully procured his discharge; (2) in contract, alleging the constitution and by-laws of defendants constituted a contract between them, and defendants violated it in procuring his discharge; and (3) in contract, alleging breach of an oral agreement between plaintiff and the defendants by inducing Kaiser to discharge plaintiff. Damages are sought for claimed loss of seniority in defendants' union, loss of benefit of membership, companionship, loss of convenience, for mental anguish and humiliation, and for exemplary damages.

The matter was heard before a jury. Plaintiff called several witnesses under section 2055 of the Code of Civil Procedure in support of his claim, and as to the general setup in the

union in relation to the hearing of grievances of the employees. This evidence brought out that Kaiser had advised its employees that it was against the rules of the company for the employees to pass out any literature regarding union elections on its premises, and plaintiff was passing out some of it and engaging in union electioneering on the premises. It appears that about April 19, 1952, plaintiff's employment card at the plant was "pulled" and he was advised to see defendant Brunton before he went to work again. It also appears that Downie filed charges against Kaiser with the National Labor Relations Board for wrongful discharge and there was a compromise or settlement of this claim. According to the testimony, plaintiff came to Kaiser "with an unsavory record" and Brunton was assigned to be responsible for him before Kaiser would hire him. Plaintiff knew of these arrangements and accepted them. Plaintiff refers to the agreement between the union and Kaiser providing that no employee shall be peremptorily discharged without first being suspended. He claims this procedure was not followed in that he was not first suspended. The method usually adopted in suspending a worker is for the foreman to verbally suspend him by sending the man home or giving him a written slip so indicating. The evidence shows that plaintiff telephoned a member of the union that he had been suspended and that the foreman would not permit him to go to work and would not issue him a time card. Plaintiff was advised to go to the grievance committee. It was not indicated that plaintiff made any effort to initiate proceedings for such a hearing. Defendant Brunton, testifying under section 2055 of the Code of Civil Procedure, stated he was first advised by one Petty, director of labor relations between Kaiser and the union, that plaintiff's job was in jeopardy about ten days prior to his being suspended, and that he sent word to plaintiff to come and see him about his grievance but plaintiff never contacted him; that Petty called plaintiff and indicated that unless he straightened out his problems, the Kaiser Company did not intend to let him go back to work; that under the contract with Kaiser or the Constitution and by-laws of the union, any dispute that arises under them should first be initiated by the employee claiming the grievance and he never did file a complaint under the contract or under the constitution; and that he never said or did anything to have plaintiff suspended or discharged by Kaiser.

Plaintiff testified he had no "unsavory record" in the East, was not on so-called probation to Brunton; that he had

been secretary in one of the largest steel workers' unions in Pittsburgh; that Brunton got him a job at Kaiser's and that plaintiff paid his union dues and was a member in good standing; that on April 19, he came to work as usual and after working 20 minutes the foreman removed him from the job and told him he would have to be cleared through the union before he could go to work; that he went to the union hall and, being Saturday, it was closed; that he called to see defendant Brunton at his home and he was not there; that he saw Petty and he advised him to call one Dayton, a member of the grievance committee; that he told him his troubles and asked for a clearance; that he was told he had to see defendant Brunton before he could return to work but a clearance was given for that day; that on April 22, he returned to work and his time card had been "pulled"; that on May 2, 1952, he received a letter from Kaiser containing a termination notice; that Dayton told plaintiff to see defendant Brunton and he might get his job back; that he has never been informed as to why he was fired; that he quit paying dues to the union and is now working for Rohr Aircraft Company and that he has been humiliated and suffered loss of seniority and was damaged by the actions of defendants. On cross-examination he was shown a copy of a letter he wrote on September 29, 1952, to one Murray, district director in Pittsburgh, telling him of his arrival in California. He stated therein that through the subdistrict director in California, he was unable to obtain a job here himself because he was considered "a definite trouble maker . . . on account of my Union activities in Pittsburgh" and claimed it was through Brunton that he was able to obtain this employment. He admitted passing out union election literature on the company property and campaigning among the men in the plant for his friend who he said had reputedly been wrongfully accused of being kicked out of the union back East for Communistic activities. He then testified that he had been accused of making a statement that he was going to run Brunton out of town; that he did not know of anything done directly by Brunton to have him discharged; that he knew the grievance procedure and did register an oral grievance with the company foreman; that he filed no charges against Brunton or the union according to the procedure prescribed because he felt that it would be futile since Brunton ran the union.

Plaintiff produced the witness for whom he was campaigning. He testified he talked to defendant Brunton about plain-

tiff and that Brunton said Downie was going around saying he was going to run Brunton out of town, and as soon as Downie didn't show up in his office when he sent for him he was going to have his card "pulled" and he would not be able to go to work until he saw Brunton. He then testified that he did not know Brunton actually induced Kaiser to fire plaintiff. It appears that this witness was also fired from Kaiser for unauthorized absence from work while attending the international convention, and he took his appeal through all the steps provided by the union and lost his case.

██ Defendants produced no witnesses except those testifying under section 2055 of the Code of Civil Procedure. Motions for nonsuit and a directed verdict for defendants were denied. In the absence of the jury, the judge stated that if the jury decides the case in favor of the plaintiff he would grant a new trial on the evidence produced. The jury returned a verdict against defendants for $15,000 and on a motion for a new trial the court granted it upon all statutory grounds, including insufficiency of the evidence. The appeal is from this order and the principal claim is that the court abused its discretion in so doing.

As we view it, plaintiff contends that since all the evidence produced by plaintiff was testimony of his own witnesses and those called under section 2055 of the Code of Civil Procedure, there was no conflict in the testimony, that there was no evidence that would support a verdict in defendants' favor, and accordingly, the evidence should be judged as though ruling on a motion for nonsuit, citing *Weck* v. *Los Angeles County Flood Control Dist.*, 80 Cal. App.2d 182, 191 [181 P.2d 935] ; and *de la Falaise* v. *Gaumont-British P. Corp.*, 39 Cal.App.2d 461 [103 P.2d 447]. We see no merit to this contention. It is apparent from the record that the trial judge, after hearing all the evidence produced, was of the opinion that a nonsuit might be allowable, but that he preferred to decide the question of the sufficiency of the evidence on a motion for new trial, where the law allows a much wider discretion.

In *Otten* v. *Spreckels*, 24 Cal.App. 251 [141 P. 224], it was held that the plaintiff in a civil action must establish his case by a preponderance of proof, but although many witnesses may testify directly in favor of his position, and no adverse testimony may be directly adduced, it is still with the jury, in the first instance, and finally with the trial court where a new trial is asked on the ground of the insufficiency

of the evidence to support the verdict, to say whether such testimony, when subjected to the legal tests whereby the probative value of evidence is to be judged, measures up to the requirement of the law as to the degree of proof essential to the support of an issue of fact. (See also *Perry* v. *Fowler*, 102 Cal.App.2d 808, 811 [229 P.2d 46] ; Witkin on California Procedure, pp. 2060-2061.) ██ Other late cases emphasize the fact that it is not only the right, but the duty of the trial judge to grant a new trial when, in his opinion, he believes the weight of the evidence to be contrary to the finding of the jury, and that the trial judges are to be commended, rather than condemned, for their actions in granting new trials under those circumstances. (*Tice* v. *Kaiser Co.*, 102 Cal.App.2d 44, 46 [226 P.2d 624].)

██ Here, the trial court had the right to disbelieve certain testimony and reasonably conclude that the evidence was insufficient to support a finding that defendants wrongfully and unlawfully procured the discharge of plaintiff from Kaiser. It further affirmatively appears, even from plaintiff's testimony, that he failed and refused to first pursue the remedy provided by the constitution and by-laws of the union in reference to his grievance, before resorting to the courts for redress. (*Zepeda* v. *International Hodcarriers etc. Union*, 143 Cal.App.2d 609 [300 P.2d 251].) A review of the entire testimony produced fully justifies the action of the trial court.

Order granting a new trial affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied January 8, 1957, and appellant's petition for a hearing by the Supreme Court was denied February 13, 1957.