[Civ. No. 5444. Fourth Dist. June 18, 1957.]

J. B. ASKEW, as Director of Public Health, etc., et al., Respondents, v. MERLE E. PARKER et al., Appellants.

M. L. Campbell for Appellants.

James Don Keller, District Attorney and County Counsel (San Diego), and Joseph B. Harvey, Deputy, for Respondents.

GRIFFIN, J.—This is an action by plaintiffs and respondents J. B. Askew, as Director of Public Health of the County of San Diego, and County of San Diego against defendants and appellants Merle E. Parker, The Foundation for Divine Meditation, Inc., et al., enjoining the defendants from preventing plaintiffs from inspecting the swimming pool on defendants' premises, pursuant to section 24104 of the Health and Safety Code.

Defendants defended their right to prevent the county sanitarians from such inspection on the ground that the pool is private and therefore not within the scope of the cited section. It is further claimed that the water in the pool was frequently changed; that it appeared clear and clean and that defendant Parker, before the pool was placed in use, had taken a sample of the water to a private laboratory for test purposes and it was found free from harmful bacteria.

Defendant Parker is the chief executive officer of the corporation named. It owns the real property upon which the swimming pool was constructed. It was 50 by 75 feet in dimension and built during the 1954 summer season. On June 11, 1955, defendants sent out about 300 to 400 general written invitations, by mail, to all post-office box holders and R.F.D. box holders, through the United States Post Office at Valley Center, to all the teen-age children in that community, to use the pool free of charge. Over 100 of these children registered to use the pool. During the summer season of 1955 it was used by 40 to 60 of these children every day except Saturdays and Sundays. The pool was fenced and no persons were admitted except those who could qualify under the general invitations sent out. Two life guards or instructors were employed and paid by the church. On June 16, 1955, two sanitarians of plaintiffs attempted to obtain information concerning the nature of the swimming pool operation. Defendants refused to cooperate. A notice was posted on the property by defendants reciting:

"I personally, and the organization I head, refuse to recognize any so-called 'health department' which does not have upon its board representatives of ALL of the licensed healing arts . . . viz: Chiropractors, Naturopaths, Osteopaths, and Christian Science Practitioners, as well as the M.D.'s whose aim it is to 'outlaw' all branches of healing not dealing in drugs." Such representatives were directed to remain away until some court directed such an entry.

On September 1st, 1956, while defendants were again operating the pool, as before, plaintiffs' agents entered the premises and asked permission of defendants to take a sample of the swimming pool water to make a bacterial analysis. The request was refused, although the pool was then being used pursuant to the public invitation above mentioned. After a hearing the court found that under the conditions existing the defendants were operating a public swimming pool within the meaning of the Health and Safety Code, and granted the injunction for which plaintiffs prayed.

The principal question is the sufficiency of the evidence to support this finding. Section 24100 of the Health and Safety Code provides that: " 'Public swimming pool,' as used in this article, means any public swimming pool, bathhouse, public swimming and bathing place and all related appurtenances." Section 24101 provides that "The State Department of Public Health has supervision of sanitation, health-

fulness, and safety of public swimming pools." Defendants quote Black's Law Dictionary defining "Public" as "Open to all; . . . Common to all or many; . . . open to common use." They also cite section 51 of the Civil Code. They claim that before a swimming pool can be classified as public it must be open to all, and is not a public swimming pool unless a monetary consideration is exacted; that the courts and the Legislature are gradually whittling away our civil liberties, and since the Legislature has not seen fit to legislate and require inspection of private swimming pools, the courts should not, through decisions, add additional burdens to such owners.

▇ The term "public" is a term of most varied and indefinite connotation, a convertible term, and does not have a fixed or definite meaning. When the word "public" is employed with its ordinary signification it is in terms of people; but the word is used variously, and depends for its meaning on the subjects to which it is applied, and must be interpreted in each case according to use and intent. Hence, we must turn to the statute itself to determine its meaning by considering the evil the Legislature intended to remedy by its enactment, by considering the interpretation it has received, and by considering other statutes similar in nature. Turning to the statute in question, it is readily apparent that we are here concerned with a public health statute enacted for the purpose of protecting the citizens of California from the dangers which may easily lurk in contaminated waters or improperly equipped and maintained swimming pools. A brief glance at the regulations of the State Department of Public Health indicates the wide variety of dangers which may be present in uninspected pools. (See regulations found in tit. 17, Cal. Admin. Code, chap. 5, subchap. 1, group 6.)

▇ The evident purpose of such rules is to protect persons who are using swimming pools which are used by many persons on a reasonably constant basis. In such a situation the word "public" must be given as broad a definition as is necessary to provide the protection to the public which the Legislature sought to provide. (3 Sutherland on Statutory Construction, 3d ed., § 7202, p. 397.) ▇ A pool may be public although all persons do not have a right to be admitted, and a pool may be public even though certain persons can be legally excluded from it. Whether a charge is made for admission is not necessarily a determining factor. The public health is not particularly affected by the transfer of

money from patron to operator, but it is affected by the physical contact of many persons with a particular swimming pool unless precautions are taken. (*Edwards* v. *Hollywood Canteen*, 27 Cal.2d 802 [167 P.2d 729].)

■ We conclude that a "public swimming pool," within the meaning of the statute here involved, is any artificially constructed pool which is commonly and regularly used by many persons in a community pursuant to a general invitation issued to a large or indeterminate group, such as an entire community, as opposed to an invitation to a specific occasion or occasions. It is the nature and extent of the use made of a swimming pool which determines its character and whether it should be subjected to public health inspection. (*People* v. *Whelpton*, 99 Cal.App.2d 828, 831 [222 P.2d 935]; *City of Chicago* v. *McGuire*, 185 Ill.App. 589.)

Under the California Administrative Code, *supra*, the Department of Public Health has assumed jurisdiction over the inspection of swimming pools in the Y.M.C.A., clubs, churches, auto courts, hotels and motels, schools and other such pools used by many persons on a regular basis, even though no separate charge is made for its use and even though certain classes of the public may be excluded. ■ The administrative interpretation of the statute will be accorded respect by the courts and will be followed if not clearly erroneous. (*Bodinson Manufacturing Co.* v. *California Emp. Com.*, 17 Cal.2d 321, 325 [109 P.2d 935]; *County of Los Angeles* v. *Superior Court*, 17 Cal.2d 707, 712 [112 P.2d 10].)

We conclude that the purposes for which this pool was being used constituted it a public swimming pool within the meaning of the code section. The findings of the court in this respect have evidentiary support.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 13, 1957.