TAMURA, J.
 

 This is an action for wrongful death of a 14-year-old boy who died by drowning in a swimming pool maintained by defendant. The jury returned a verdict in favor of plaintiffs, but the court granted defendant’s motion for a judgment notwithstanding the verdict and alternative^ ordered a new trial on the ground of the insufficiency of the evidence to support the verdict.
 
 [1]
 
 Plaintiffs appeal from the judgment and order granting new trial.
 

 In passing upon the propriety of an order granting a judgment for defendant notwithstanding the verdict, we must apply the familiar rule that the power of the trial court to grant such a motion is subject to the same limitation applicable to the granting of a nonsuit; namely, it may be granted only when it is determined that, disregarding conflicting evidence, and giving to plaintiffs’ evidence all the value to which it is legally entitled, including every reasonable inference which may be drawn from that evidence, there is no evidence of sufficient substantiality to support a verdict for plaintiffs.
 
 (Reuther
 
 v. Viall, 62 Cal.2d 470, 474-475 [42 Cal.Rptr. 456, 398 P.2d 792] ;
 
 Quintal
 
 v.
 
 Laurel Grove Hospital,
 
 62 Cal.2d 154, 159 [41 Cal.Rptr. 577, 397 P.2d 161] ;
 
 Hergenrether
 
 v.
 
 East,
 
 61 Cal.2d 440, 442 [39 Cal.Rptr. 4, 393 P.2d 164] ;
 
 McFarland
 
 v.
 
 Voorheis-Trindle Co.,
 
 52 Cal.2d 698, 703 [343 P.2d 923] ;
 
 Reynolds
 
 v.
 
 Willson,
 
 51 Cal.2d 94, 99 [331 P.2d 48].)
 

 Viewing the evidence in the light most favorable to the plaintiffs, it may be summarized as follows :
 

 In 1957 contemporaneously with the - acquisition of two
 
 *241
 
 unimproved lots in Hesperia, plaintiff Roy P. Lucas, the victim’s father, purchased a. membership in defendant, Hesperia Golf
 
 &
 
 Country Club for $120 and received a “Certificate of Pounder’s Membership ’ ’ which entitled him and the members of his immediate family to use the recreational facilities of the club. The membership carried no proprietary interest in the club or its assets, but it was transferable by sale or inheritance subject to the approval of the board of directors. The membership was subject to the payment of “privilege fees” as set by the board of directors. Plaintiffs had used the swimming pool only once prior to the time of the incident in question.
 

 On August 13, 1961, plaintiffs, together with their three sons, arrived at the club at about 11 or 11:30 a.m., entered through the front door of the club house and proceeded to the swimming pool. No one asked whether they were members or questioned their right to use the pool. The two older boys, Roy, aged 14, and Ronald, aged 12, went to the dressing room, put on their swimming trunks, and entered the swimming pool.
 

 There were no other persons in or about the pool except one Butler who was attired in swimming trunks. Butler, who was 18 at the time, was employed by defendant as a “pool maintenance man” whose duties included supervision of the safety of those using the pool. He did not possess a Red Cross or YMCA lifeguard certificate or equivalent qualifications.
 

 Plaintiffs remained at the poolside for about 10 or 15 minutes and then left to look at some property in the area while the two boys continued swimming.
 

 The last time Ronald saw Roy in a conscious state was when the latter walked onto the diving board. At that moment Ronald looked away toward the golf course and did not turn towards the pool for approximately 20-45 seconds. He then went onto the diving board, jumped off, swam to the ladder and looked about but did not see his brother. Upon re-entering the water, he saw a figure in a squatting position at the shallow end of the pool which he realized was his brother. He picked Roy up from the water, looked around and called for help. No one responded so he kept “yelling and yelling” until a lady seated in a lounge chair heard him and came over. By -this time Butler responded and assisted in removing Roy from the pool.
 

 Butler placed Roy face down at the side of the pool and •proceeded to administer artificial respiration • by getting astride the victim’s back and manually pressing his ribs and •alternately raising his stomach.
 

 
 *242
 
 About 45 minutes to an hour elapsed before an ambulance and...a fire truck arrived.■ Meanwhile Butler, a golf pro from the adjoining golf shop and two deputy sheriffs took turns administering artificial respiration in the manner heretofore described.- When the fire trucks arrived, a mechanical resuscitator'was employed, but all efforts to revive the boy failed. A doctor arrived about 20 minutes after the arrival of the ambulance and fire truck. He examined Roy and pronounced him dead. The evidence was undisputed that death was e-aus.ed by drowning. The autopsy failed to reveal any other cause of death. It was stipulated that the boy had been in excellent health and physical condition.
 

 The evidence indicated that drowning occurred about 12 o'clock noon. A wife of a deputy sheriff who worked as desk clerk at the nearby inn testified that within two or three minutes after -the switchboard received word of the drowning, she called her husband who was stationed in Hesperia. He received the call at 12:20 p.m. The call for emergency aid thus apparently reached the desk at the inn about 12:17 p.m.
 

 Plaintiffs introduced medical testimony that in drowning cases the sooner proper resuscitation treatment is administered, the greater the chances of revival.
 

 Instructions for mouth-to-mouth resuscitation were posted on the premises near the pool. That method, however, was apparently never employed in the attempted revival of the victim.
 

 It was stipulated that on August 16, three days after the drowning, there was a sign posted on the premises stating, “Warning. No life guard on duty. Children Should Not Use Pool Without An Adult In Attendance.” Plaintiffs testified that they did not see such a sign posted on August 13. A county health officer who made periodic inspections of the pool testified that he saw the sign on August 16, but that it was not posted on a prior inspection which he had made several months earlier.
 

 The health officer also testified that annual licenses had been issued to defendant by the State Department of Public ■Health for the operation of the pool and that he had on prior •inspections discussed with defendant’s representatives the state rules and regulations relating to the maintenance and .operation of the pool.
 

 ■ The defense attempted to show that plaintiff’s membership in the club had either been terminated or had expired and that deceased was thus a trespasser or at most a licensee
 
 *243
 
 and not an invitee. Defendant introduced evidence that.-the board of directors had established a “privilege fee”'of $2,00'.. per month, that plaintiffs were billed for the dues and that, no payment was ever made. Plaintiffs testified that they had no knowledge that dues had been established and denied having ever received notices to pay dues. Defendant also introduced evidence that each charter member was issued' a membership card which recited on its face that it was valid only until the club house was completed. Defendant-contended that since the club house had been completed prior to the incident in question, plaintiff’s membership had expired.
 

 We have determined that the evidence was of sufficient substantiality to justify the jury in finding that all of the essential elements of liability had been established, namely, (1) that the deceased was an invitee; (2) that defendant was negligent in failing to comply with statutory and administrative rules and regulations pertaining to the operation of the swimming pool; -and (3) that such negligence was the. proximate cause of the victim’s death.
 

 The evidence was sufficient to support a finding that the deceased was an invitee by virtue of his father’s membership which entitled members of the immediate family and, their guests to use the recreational facilities of the club.
 

 Defendant contends that plaintiff’s membership had terminated under the provision of the by-laws that failure to remit dues within 30 days after mailing of notices to pay “ipsofacto” terminates membership, subject only to reinstatement on approval of the board of directors. Admittedly plaintiff never paid dues. Defendant’s bookkeeper' testified to the office procedure and practice in billing members and by-referring to a card file, deduced the fact that notices to pay dues were mailed to plaintiffs. This testimony was sufficient to give rise to an inference that bills in fact had been mailed to plaintiffs. (Evid. Code, § 1105; Witkin, Cal. Evidence (2d ed. 1966), pp. 296-297.) Plaintiffs testified, however, that; they never received any bills for dues. Plaintiffs’ denial raised an inference that notices were never mailed to plaintiffs and, thus, presented a conflict in the evidence to be resolved by the jury.
 
 (Savarese
 
 v.
 
 State Farm etc. Ins. Co.,
 
 150 Cal.App.2d 518, 521 [310 P.2d 142] ;
 
 Jensen
 
 v.
 
 Traders & General Ins. Co.,
 
 141 Cal.App.2d 162, 164-165 [296 P.2d 434].) The jury could have found that plaintiff’s membership had not been terminated by nonpayment of dues.
 

 
 *244
 
 Defendant’s contention that plaintiff’s membership had expired by virtue of the recital on the temporary membership card stating “Temporary membership card until club house is completed” is without merit. The recital merely expressed the period during which the card would serve as indicia of membership. It fixed the life of the card, not the life of the membership. Presumably when the club house was completed, it was contemplated that new cards would be issued.
 

 There was thus sufficient evidence from which the jury could have found that the deceased was an invitee. Being an invitee the defendant owed him a duty of exercising due care to keep the premises in a reasonably safe condition.
 
 (Taylor
 
 v.
 
 Centennial Bowl, Inc.,
 
 65 Cal.2d 114, 121 [52 Cal.Rptr. 561, 416 P.2d 793] ;
 
 Laird
 
 v.
 
 T. W. Mather, Inc.,
 
 51 Cal.2d 210, 215 [331 P.2d 617].)
 

 Turning to the issue of negligence, plaintiffs sought to prove that the swimming pool maintained by defendant was subject to the provisions of sections 24100-24109 of the Health and Safety Code, and the regulations of the State Department of Health promulgated thereunder, and that defendant was negligent in failing to comply with certain of those statutory provisions and regulations.
 

 As used in the article relating to swimming pool sanitation, the Health and Safety Code defines the term “public swimming pool” as “any public swimming pool, bath house, public swimming and bathing place and all related appurtenances.” (§ 24100.)
 
 [2]
 
 Lifeguard service must be provided for any “public swimming pool” for the use of which a direct fee is charged, and for all others lifeguard service must be provided unless a sign is posted indicating that such service is not provided. (§ 24104.4) “Lifeguard service” is defined to mean the attendance of one or more lifeguards who hold Red Cross or YMCA senior lifeguard certificates or have equivalent qualifications and who have no .duties to perform other than to supervise the safety of those using the pool. (§ 24100.1) Every public swimming pool must be maintained in such condition that it is at all times “sanitary, healthful and safe.” (§§ 24101.2 and 24101.3) The State Department of Public Health is authorized to make and enforce rules and regulations pertaining to “public swimming pools” (§ 24102) and every health officer is empowered
 
 *245
 
 to enforce them in his jurisdiction (§ 24103) and to enter the premises of a swimming pool to make examinations and investigations to assure compliance with the rules and regulations (§ 24104.)
 

 A critical issue is whether the facility maintained by defendant was a “public swimming pool” within the statutory meaning.
 

 The State Department of Public Health has construed the term as extending to all pools “except private pools maintained by an individual for the use of his family and friends” and as including, but not limited to, “all commercial pools, real estate and community pools, pools at hotels, motels, resorts, auto and trailer parks, auto courts, apartment houses, clubs, public or private schools, and gymnasia and health establishments.” Cal.Admin. Code, tit. 17, § 7775.)
 

 Consistent administrative construction of a statute for many years, particularly, as here, by the agency charged with its administration, is entitled to great weight and should not be overturned unless it is clearly erroneous.
 
 (DiGiorgio Fruit Corp.
 
 v.
 
 Department of Employment,
 
 56 Cal.2d 54, 61-62 [13 Cal.Rptr. 663, 362 P.2d 487] ;
 
 Meyer
 
 v.
 
 Board of Trustees,
 
 195 Cal.App.2d 420, 431 [15 Cal.Rptr. 717].) The word “public” has no fixed meaning applicable to all situations; its connotation varies with the context in which it is used.
 
 (Askew
 
 v.
 
 Parker,
 
 151 Cal.App.2d 759, 762 [312 P.2d 342];
 
 Edwards
 
 v.
 
 Hollywood Canteen,
 
 27 Cal.2d 802, 808 [167 P.2d 729].) The State Department of Public Health has adopted an interpretation of the term “public swimming pool” by exclusion rather than by inclusion; that is, it has construed the term as excluding only strictly private pools maintained for the use of a family and its friends. This is a reasonable construction consistent with the statutory purpose of protecting the health and safety of those using swimming pools which are available to the use of many persons on a regular basis. We find no justification for overturning that interpretation.
 

 In
 
 Askew
 
 v.
 
 Parker, supra,
 
 151 Cal.App.2d 759, a religious organization sent out general invitations to teenagers in the community to use its swimming pool free of charge during the summer months. Only those qualifying under the general invitation were admiteed. In holding that the pool was a “public swimming pool” subject to inspections by the State Department of Public Health, the court observed that a pool may be public even though it is not open to the public gen
 
 *246
 
 erally. It held that since the facility was available to use by many persons “pursuant to a general invitation issued to a large or indeterminate group, ’ ’ it was a public swimming pool within the meaning of the statute. In reaching this conclusion the court took cognizance of the administrative interpretation of the statute by the State Department of Public Health and held that it was entitled to great weight.
 

 Defendant contends that in the light of the recent decision in
 
 O’Keefe
 
 v.
 
 South End Rowing Club,
 
 64 Cal.2d 729 [51 Cal.Rptr. 534, 414 P.2d 830], the factual situation of
 
 Askew
 
 v.
 
 Parker, supra,
 
 151 Cal.App.2d 759, must be present before a privately owned pool may be deemed to be a “public swimming pool. ’ ’ The contention is without merit. In
 
 O’Keefe, supra,
 
 plaintiff entered the premises of a private club without permission and suffered injury when he dove from a launching pier. In rejecting plaintiff’s contention that the bay front property leased by the club from the City and County of San Francisco was a “public swimming pool” within the meaning of the Health and Safety Code and that plaintiff was, therefore, an invitee, the court observed that the provisions of the Health and Safety Code “are expressly made applicable only to 1 public bathing places’ and do not, ipso facto, transform defendant’s private club into a public beach.” The court did distinguish
 
 Askew
 
 v.
 
 Parker, supra,
 
 151 Cal.App.2d 759, by pointing out that in that case general invitations had been extended to a large and indeterminate group. The issue in
 
 O’Keefe, supra,
 
 however, was the status of the plaintiff and not whether the premises were subject to inspection and regulation by the State Department of Public Health. Clearly the fact that a pool may be subject to such inspection and regulation does not transform it into one available to use by the general public so that anyone using it would be an invitee. Moreover, as the court pointed out, the waters of San Francisco Bay could not be said to be “an artificially constructed pool,” an essential element of the statutory definition of a “public swimming pool. ’ ’
 

 In the instant case, although the evidence leaves much to be desired respecting the extent of the use made of the pool, it may be reasonably inferred from the evidence that it was available to use by a large number of persons. From the testimony of defendant’s bookkeeper respecting the manner in which the records of the members were maintained, it may be inferred that the membership was considerable. There is no evidence that eligibility to membership
 
 *247
 
 or guest privileges was restricted. The evidence shows that the pool was licensed by the State Department of Public Health and that the county health officer made periodic inspections of it. There was sufficient evidence that the pool was a “public swimming pool” within the meaning of the statutes and regulations.
 

 Having determined that defendant’s facility was a “public swimming pool,” we consider plaintiffs' contention that defendant was negligent in failing to comply with certain of the statutory provisions and regulations.
 

 The evidence was sufficient to support a finding that defendant failed to provide qualified lifeguard service as required by the Health and Safety Code. Although the evidence was conflicting, the jury could have found that a sign stating that lifeguard service was not provided was not posted on the premises on the date of the drowning. In such circumstances the statute requires that qualified lifeguard service be provided. (§ 24101.4.) The evidence is uncontradicted that Butler did not possess the qualifications required by the Health and Safety Code.
 

 The evidence was also uncontradicted that although defendant had posted the names of the agencies to be called in the event of an emergency, the notice failed to give the telephone numbers of the agencies listed as required by the regulations of the State Department of Public Health.
 
 [3]
 

 The foregoing rules being designed to protect the safety of the class of persons of whom the victim was a member, a violation thereof constituted negligence per se.
 
 Porter
 
 v.
 
 Montgomery, Ward & Co.,
 
 48 Cal.2d 846, 849 [313 P.2d 854] ;
 
 Finnegan
 
 v.
 
 Royal Realty Co.,
 
 35 Cal.2d 409, 416 [218 P.2d 17];
 
 Satterlee
 
 v.
 
 Orange Glenn School Dist.,
 
 29 Cal.2d 581, 588 [177 P.2d 279] ;
 
 Harris
 
 v.
 
 Joffe,
 
 28 Cal.2d 418, 424 [170 P.2d 454] ; Prosser, Torts (3d ed.) p. 202.)
 

 On the issue of proximate cause defendant urges that there was no evidence that the failure to provide “qualified lifeguard service” or to post the telephone numbers of the
 
 *248
 
 emergency agencies was the proximate cause of the victim’s death.
 

 The contention may not be sustained. A breach of a statutory duty may be sufficient to give rise to an inference from which the jury may find that the injury was the proximate result of the violation.
 
 (Lindsey
 
 v.
 
 DeVaux,
 
 50 Cal.App.2d 445 [123 P.2d 144] ;
 
 Finnegan
 
 v.
 
 Royal Realty Co., supra,
 
 35 Cal.2d 409, 424;
 
 Rovegno
 
 v.
 
 San Jose Knights of Columbus Hall Assn.,
 
 108 Cal.App. 591, 595 [291 P. 848].)
 

 In
 
 Lindsey
 
 v.
 
 DeVaux, supra,
 
 50 Cal.App.2d 445, 454, a like contention was rejected where a drowning occurred in a public swimming pool where no lifeguard service was provided. The court stated at pages 454-455: “Appellants assert that even assuming that the life guard was not on duty when Joe Lindsey was drowned, respondent has failed to show any causal connection between this alleged negligence and the accident complained of. In our opinion, this contention is fully answered by the following language in the case of
 
 Rovegno
 
 v.
 
 San Jose Knights of Columbus Hall Assn.,
 
 108 Cal.App. 591 [291 P. 848], at p. 595, in which case a hearing was denied by the Supreme Court:
 

 “ ‘The most serious question for determination is the question of proximate cause—does the record disclose any evidence of negligence on the part of respondents proximately causing the death of appellant’s son? As above stated, the only negligence alleged is the failure of respondents to provide a lifeguard or other person or persons skilled in lifesaving. Even had such a guard been present, respondents urge, there is no showing that the boy’s life would have been saved. Just what would have happened had a life-guard been present is, of course, not capable of direct proof. It is largely a matter of speculation or of inference. Even so, it has been held that the question is one for the jury and not for the court. ’ ”
 

 In
 
 Finnegan
 
 v.
 
 Royal Realty Co., supra,
 
 35 Cal.2d 409, plaintiffs were injured when a fire broke out in the second floor of a building in which they were employed and which had been leased by the employer for the manufacture of celluloid products. There was evidence that the building was not equipped with an automatic sprinkler system as required by the municipal safety ordinance. In rejecting a contention that there was no evidence of a causal connection between the violation of the ordinance and plaintiff’s injury, the court stated at p. 424: “Just what would have
 
 *249
 
 happened in the present case had a sprinkler system been in operation is not capable of direct proof and must, of necessity, be largely a matter of speculation or inference. And, even so, it has been held that the question is one for the jury, and not for the court.
 
 (Revegno
 
 v.
 
 San Jose Knights of Columbus Hall Assn.,
 
 108 Cal.App. 591-595 [291 P. 848], hearing denied;
 
 Lindsey
 
 v.
 
 DeVaux, supra.)
 
 ”
 

 In the instant case there was no direct evidence as to what might have happened had a qualified lifeguard been in attendance. The jury, however, could have reasonably inferred that had one been in attendance as required by law, the victim may have survived. It is significant that although the defendant had posted on its premises instructions for mouth-to-mouth resuscitation as required by the regulations of the State Department of Public Health (Cal.Admin.Code, tit. 17, § 7829), that method was apparently never employed.
 

 As to the failure to list telephone numbers of the emergency agencies, defendant urges that the evidence shows that such failure did not delay outgoing calls. Although defendant introduced evidence respecting the procedure followed by the switchboard at the inn in relaying calls to emergency agencies, the jury could have inferred that the failure to post the phone numbers resulted in some delay. There was evidence that time is of the essence in drowning cases.
 

 For the foregoing reasons we conclude that the evidence was sufficient from which the jury could have found the existence of all of the essential elements of liability and that the judgment notwithstanding the verdict must be reversed.
 

 As to the order granting a new trial, the granting of such a motion is subject to a different rule from that governing the granting of motions for judgments notwithstanding the verdict, directed verdicts or nonsuits.
 

 On a motion for a new trial, the judge must weigh and consider the evidence of both parties. If he is convinced that the verdict is clearly against the weight of the evidence, it is his duty to grant a new trial even though there may be conflicts in the evidence.
 
 (Ballard
 
 v.
 
 Pacific Greyhound Lines,
 
 28 Cal.2d 357 [170 P.2d 465] ;
 
 Estate of Wall,
 
 183 Cal. 431 [191 P. 687] ;
 
 Estate of Bainbridge,
 
 169 Cal. 266 [146 P. 427] ;
 
 Green
 
 v.
 
 Soule,
 
 145 Cal. 96 [78 P. 337];
 
 Lyon
 
 v.
 
 Aronson,
 
 140 Cal. 365 [73 P. 1063] ;
 
 Newman
 
 v.
 
 Overland Pac. Ry. Co.,
 
 132 Cal. 73, 74 [64 P. 110];
 
 Downie
 
 v.
 
 Brunton,
 
 147 Cal.App.2d 43 [304 P.2d 1028].) A motion for
 
 *250
 
 new trial based on insufficiency of the evidence to sustain the verdict is addressed to the sound legal discretion of the trial court, and its order will not be disturbed except in a clear ease of abuse of discretion
 
 (Anglo-Nevada etc. Corp.
 
 v. Ross, 123 Cal. 520, 522 [56 P. 335];
 
 Simpson
 
 v.
 
 New York Hardware Trading Co.,
 
 91 Cal.App. 213, 221 [266 P. 956]), particularly an order granting a motion since such order does not finally dispose of the matter.
 
 (Holling
 
 v.
 
 Chandler,
 
 241 Cal.App.2d 19, 23 [50 Cal.Rptr. 219].)
 

 In view of the state of the evidence on some of the crucial issues in the ease, there was no abuse of discretion in granting defendant’s motion for new trial.
 

 The judgment notwithstanding the verdict is reversed and the order granting a new trial is affirmed.
 

 Kerrigan, Acting P. J., and Thompson (Raymond), J. pro tern.,
 
 *
 
 concurred.
 

 A petition for a rehearing was denied November 14,
 
 1967.
 

 [1]
 

 In accordance with the provisions of section 629, Code of Civil Procedure, the order granting the new trial was made effective only if, on appeal, the judgment notwithstanding the verdict is reversed and the order granting a new trial is not appealed from, or if appealed from, is affirmed.
 

 [2]
 

 All references are to the Health and Safety Code unless otherwise indicated.
 

 [3]
 

 Section 7829 of the Regulations provides in part: “At all pools diagrammatic illustrations of artificial respiration procedures shall be posted where clearly visible from the nearby deck and shall be protected against the elements. Also, the location and telephone number of the nearest ambulance, hospital, fire, or police rescue service, physician and pool operator shall be kept similarly posted together with instructions that in case of need manual or mouth-to-mouth artificial respiration should be started immediately and continued until a physician arrives or mechanical reseuseitators are applied.” (Cal. Admin. Code, tit. 17, § 7829, on p. 168.10.)
 

 *
 

 Assigned by the Chairman of the Judicial Council.