QUESTION: What is the meaning of the term "public" as used in s. 283.28, F. S., which requires state agencies which distribute printed material to the public without charge on a periodic basis to purge their mailing lists annually?
SUMMARY: State agencies distributing printed material without charge on a periodic basis to entities and persons other than subordinate or functionally related or connected governmental agencies and officials are required to purge their mailing lists annually in the manner of, and pursuant to, the procedure prescribed in s. 283.28, F. S. For the purposes of s. 283.28, F. S., the phrase "to the public" means those entities and persons other than subordinate and functionally related or connected governmental agencies and officials whose names appear on one or more mailing lists kept and maintained by a state agency and used by it for the purpose of making periodic distributions of printed material without charge to such entities and persons. Section 283.28, F. S., provides: State agencies which distribute printed material to the public without charge on a periodic basis shall purge their mailing lists annually. At least annually, each agency shall require each subscriber to reply affirmatively that he wishes to continue receiving such printed material. Any subscriber failing to so reply shall have his name purged from the list. The Legislature has not defined the term "public" as used in s. 283.28, F. S. The term "public" does not have any fixed or definite meaning, but must depend for its meaning on the context in which it is used or to which it is applied and must be interpreted according to its use and the legislative intent as gleaned from the statute. See 73 C.J.S. Public, pp. 274-275, and Askew v. Parker, 312 P.2d 342 (Cal.Ct.App. 1957). The preamble of Ch. 75-84, Laws of Florida, creating s. 283.28, F. S., states that the basis for this law is the Governor's Management and Efficiency Study Commission Recommendation Number 10 relating to the Department of Agriculture and Consumer Services, which recommended that the department should purge mailing lists annually. From my conversation with the Department of Agriculture, it is apparent that the mailing lists to which the commission referred were for publications which were mailed to private individuals who had requested to be placed on such lists. In construing a statute, consideration must be given to its history, the evil to be corrected, the intent of the Legislature, the subject to be regulated, and the objectives to be obtained. In statutory construction, the legislative intent as gleaned from the statute is the polestar by which one is guided. Singleton v. Larson, 46 So.2d 186 (Fla. 1959); Garner v. Ward, 251 So.2d 252
(Fla. 1971); American Bakeries Co. v. Haines City, 180 So. 524
(Fla. 1938). The preamble is to be considered in construing a statute. 2A Sutherland Statutory Construction s. 47.04 (Sands 4th Ed. 1973). The term "public" and the phrase "to the public" have been construed by the courts in other jurisdictions in varying contexts. In Barkin v. Board of Optometry, 269 C.A.2d 714,75 Cal.Rptr. 337 (Ct.App. 1969), a statute prohibited advertising to the public for discount professional services. The court held that the mailing of advertisements only to members of a union and their families nevertheless was advertising to the public. The court said that "public" did not mean all the people, or most of the people, "but so many of them as contradistinguishes them from a few." In People v. A.A.A. Dental Laboratories, 47 N.E.2d 371 (Ill. 1943), the court held that the provisions of the Illinois Dental Practice Act permitting corporations to make dental plates in accordance with impressions taken by a licensed dentist provided such plates were not offered for sale or delivery to the public used the word "public" as meaning persons other than those examined and fitted by licensed dentists. The court in Iowa State Commerce Commission v. Northern Natural Gas Co. 161 N.W.2d 111
(Ia. 1968), was called upon to define the phrase "furnishing gas . . . to the public." The Iowa Supreme Court defined "to the public" in this context to mean "sales to sufficient of the public to clothe the operation with a public interest and does not mean willingness to sell to each and every one of the public without discrimination." Griffith v. New Mexico Public Service Commission,520 P.2d 269 (N.M. 1974), involved a subdivision developer who provided lot owners with water services and charged them therefor. The court, following the definition of "to the public" set forth in Iowa State Commerce Commission, supra, held that although water was supplied only to lot owners of the subdivision, it was furnishing water "to or for the public." In Gary Pickford Co. v. Bagly Bros., Inc., 86 P.2d 102 (Cal. 1939), the court ruled that offering securities to a small number of persons at random was an offering to the public. There appears to be no clear-cut point from which to determine that a distribution of printed material is "to the public." The term "public" and each distribution of printed material must be considered in light of the statutory context in which such term is used and the above definitions and judicial constructions of similar terms. Section 283.28, F. S., does provide at least a modicum of guidance in that it requires "their mailing lists" to be purged and that "each subscriber" be required by the affected agency to "reply affirmatively that he wishes to continue receiving" any printed material that he had in fact been receiving. It would seem to follow that those persons on an agency's mailing list to whom printed material is being or has been distributed on a periodic basis without charge would, at least, come within the purview of the phrase "to the public" as used in s. 283.28. It should be noted that the statute does not purport to regulate the distribution of printed material, nor does it seek to inhibit or restrict such distribution without charge on a periodic basis to the public as distinguished from distributions to governmental entities and officials; but it operates on the state agency's mail list or list of subscribers, i.e., those persons to whom the free periodic distributions are being made, and it is those lists which the statute requires to be purged annually. Thus, it appears that the term "public" as used in s. 283.28 has reference to those entities and persons other than governmental entities and officials whose names appear on any one or more mailing or subscribers' lists kept and maintained by the agency to be used by it in making the periodic distributions of printed material without charge to such entities and persons. The title to Ch. 75-84, Laws of Florida, and the preamble and language of the act make manifest the legislative intent that all state agencies distributing any printed material without charge on a periodic basis be required to purge their mailing lists governing such distributions annually. The act also prescribes the procedure therefor, i.e., all state agencies shall require each person or subscriber whose name appears on any one or more such mailing lists kept or maintained by the agencies for such purposes to reply affirmatively to the affected agency that such person wishes to continue receiving such printed material, failing in which his name shall be purged from such mailing list or lists. Although s. 283.28, F. S., is not limited to such printed material, it includes or operates upon the public documents defined in s.257.05(1), F. S., and regulated by s. 283.27, F. S., but does not appear to include any printed materials or distribution of printed materials for which a charge to the recipient is made by the affected state agency or any printed materials which are not regularly distributed on some periodic basis — recurring at fixed intervals or regularly recurring intervals. See Black's Law Dictionary (Rev'd 4th Ed.), at p. 1297, and 70 C.J.S. Periodic, at p. 453. The act, in its peculiar context, would not appear to apply to subordinate or functionally related or connected governmental agencies and officials. In AGO 073-147, I ruled that a manual of instructions for tax assessors prepared by the Department of Revenue to instruct and assist taxing officials in the administration of property taxes is not a document "subject to distribution to the public." General public distribution of the manual would be inconsistent with the prescribed statutory purpose for its promulgation.