716 P.2d 424

**BLACK CLOUD BUILDING CORPORA-TION, an Arizona corporation, Plaintiff-Appellant,**

**v.**

**MARICOPA COUNTY, a political subdivision, Defendant-Appellee.**

Nos. 1 CA–CIV 7427, 1 CA–CIV 7375.

Court of Appeals of Arizona, Division 1, Department D.

Dec. 10, 1985.

David R. Postal, P.C. by David R. Postal, Phoenix, for plaintiff-appellant.

Tom Collins, Maricopa County Atty. by Barbara Lee Caldwell, Deputy County Atty., Phoenix, for defendant-appellee.

## OPINION

JACOBSON, Judge.

In this action for declaratory judgment, the appellant, Black Cloud Building Corporation (Black Cloud), challenges the authority of the Maricopa County Department of Health Services (County Health Department) to regulate a spa located within the common area of a condominium complex. The trial court granted summary judgment in favor of the appellee Maricopa County.

The issues which we must determine on appeal are: (1) whether the County Health Department is authorized to define public and semipublic pools and bathing places, and to issue licenses and assess fees; (2) whether a spa located within the common area of a condominium complex is a semipublic pool or bathing place; and (3) whether regulation of spas by the County Health Department violates the City of Phoenix's health ordinances.

The facts material to the resolution of this appeal are not in dispute. Prior to November, 1982, Black Cloud, a licensed general contractor, began constructing a 24-unit condominium development known as Village East Condominiums in Phoenix, Arizona. As part of the project, Black Cloud installed a 7.5' x 7.5' x 3' fiberglass spa in the common area of the development. Black Cloud neither submitted construction plans nor obtained a permit from the County Health Department to operate the spa prior to or after installing it.

The Maricopa County Health Code proscribes the construction of bathing places without first submitting plans to and receiving the approval thereof from the County Health Department. The Code also proscribes the operation of public or semipublic bathing places without a permit issued by the County Health Department. In addition, the Department charges fees for inspecting, licensing and regulating public and semipublic bathing places.

On November 9, 1982, the County Health Department notified Black Cloud that the spa at the Village East Condominiums had been constructed illegally because of Black Cloud's failure to obtain the necessary permits and approval, and because the color of the spa did not meet Code specifications.

On January 19, 1983, Black Cloud filed a complaint in superior court against Maricopa County, requesting a declaratory judgment and injunctive relief. In the complaint, Black Cloud sought a judgment declaring the County Health Department regulations void where they conflicted with the regulations of the Arizona Department of Health Services (State Health Department) and that the County Health Department had no statutory authority to charge or collect inspection, testing or licensing fees. Black Cloud also requested the court to enjoin County Health Department employees from entering the condominium complex, harassing Black Cloud employees or subcontractors, and posting the spa closed or initiating legal action against Black Cloud because of the spa.

By its judgment, the trial court determined that the County had the necessary statutory authority to regulate the installation and inspection of semipublic swimming pools and to charge fees in accordance with a fee schedule adopted by the Maricopa County Board of Supervisors. The trial court further concluded that the condominium spa was a semipublic pool subject to regulation by the County Health Department. Black Cloud appeals from that judgment.

On August 9, 1983, the County Health Department issued a cease and desist order directing Black Cloud to cease operating the spa until construction plans were submitted to and approved by the County Health Department. Black Cloud requested and received an administrative hearing with the County Health Department to review the cease and desist order. On November 10, 1983, the County Health De-

partment's hearing officer rendered a written decision concluding that the issues raised by Black Cloud were moot in light of the proceedings in superior court. Black Cloud then instituted a special action in the superior court challenging the validity of the administrative hearing. Black Cloud has also appealed an adverse judgment in that proceeding. That appeal will not be addressed in this opinion.

## STATUTORY AUTHORITY TO DEFINE, ISSUE LICENSES AND ASSESS FEES

Black Cloud first maintains that the County Health Department has no statutory authority to "define" public and semipublic pools and bathing places, or to issue licenses and assess fees. In determining the validity of this position, we start with the proposition that if the legislature gave statutory authority to the State Health Department to regulate a specific activity or to attain specific objectives, like authority is possessed by the County Health Department. *State v. Kelsall,* 22 Ariz.App. 97, 523 P.2d 1334 (1974).

Under Title 36 of the Arizona Revised Statutes, the State Health Department is charged with regulating health problems that affect the state at large. To accomplish this goal, the legislature has delegated substantive rule-making and enforcement powers, both general and specific, to that Department. Under A.R.S. § 36–136(F), the State Health Director is authorized to "make and amend rules necessary for the proper administration and enforcement of the laws relating to the public health." A.R.S. § 36–136(F) (Supp.1984). More specifically, A.R.S. § 36–136(G)(14) provides that the State Director:

shall, by regulation: ... [p]rescribe reasonably necessary measures to prevent pollution of water used in public or semipublic swimming pools and bathing places and to prevent deleterious health conditions at such places. The regulations shall prescribe minimum standards for design of pools, for sanitary conditions which shall be maintained at any public or semipublic swimming pool or

bathing place, and shall provide for inspection of such premises and for abatement as public nuisances of any premises and facilities which do not comply with the minimum standards.

A.R.S. § 36–136(G)(14) (Supp.1984).

In addition to enumerating the various powers and duties of the State Health Director, Title 36 also contemplates the involvement of local health boards to regulate health problems on a local level. For example, A.R.S. § 36–136(D) authorizes the State Health Director to delegate any of his or her functions, powers or duties to recognized local health departments. Furthermore, A.R.S. § 36–136(H) authorizes local health boards to adopt regulations as authorized by law within their jurisdiction, provided they do not conflict with state law, and are equal to or more restrictive than the regulations of the State Director. Pursuant to A.R.S. § 36–136(D), a delegation agreement is in effect between the State Health Director and the Maricopa County Health Department. That agreement specifically delegates the State Health Director's functions, powers and duties regarding the construction and operation of public and semipublic pools to the County Health Department.

■ While Black Cloud does not challenge the validity of the delegation agreement itself, it argues that the State Health Director has no power to "define" public and semipublic pools and thus such power cannot be delegated to or assumed by Maricopa County. The argument rests on the observation that A.R.S. § 36–136(G)(14) only expressly delegates the power to "prescribe" and not the power to "define" reasonably necessary measures to protect public and semipublic pools. To fortify the argument, Black Cloud points to other subsections of the same statute wherein the legislature specifically delegated both the power to "define" and to "prescribe" certain public health measures.

In light of the overall statutory scheme governing public health regulations in this state, we find nothing significant in the fact that A.R.S. § 36–136(G)(14) omits the

phrase "to define" from its provisions. As stated earlier, A.R.S. § 36–136(F) delegates broad and general rule-making authority to the State Health Director. The power granted in that subsection necessarily subsumes the power to "define." Since the State Health Director delegated his powers concerning public and semipublic pools to the County Health Department, we conclude that the County must also have the power to "define" public and semipublic pools and bathing places.

In challenging the County Health Department's power to issue licenses and assess fees, Black Cloud again argues for a narrow reading of our public health statutes. A.R.S. § 36–187(C) provides that:

> [a] county board of health ... may adopt a schedule of reasonable fees ... for issuing or renewing licenses or permits or for other services as are authorized by law ..., provided that:
>
> *     *     *     *     *     *
>
> 3. Any such fee or schedule shall be approved by the county board of supervisors.

A.R.S. § 36–187(C) (Supp.1984).

Pursuant to this statute, the County Health Department has adopted a fee schedule which covers the issuance of licenses and permits for the operation of public and semipublic pools and bathing pools.

Black Cloud maintains, however, that the County Health Department is not authorized by law to issue licenses or permits *since no statute expressly grants this power.* Without the authority to issue licenses, Black Cloud argues that the County Health Department has no power to assess fees either. This argument is without merit. When A.R.S. § 36–187 is read in context with the entire statutory scheme governing public health, we find ample authority to support the County Health Department's licensing and fee collecting functions.

A.R.S. § 36–136(G)(14) specifically authorizes the prescription of reasonably necessary measures to prevent deleterious health conditions at public and semipublic pools. The regulations are to include mini-mum standards for pool design as well as for sanitary conditions at the pools. The statute goes on to provide for the inspection of public and semipublic pools and for abatement of non-complying facilities. A.R.S. § 36–136(F) grants the authority to make and amend rules necessary for the administration of the public health laws. The language and purpose of these statutes, when read in conjunction with A.R.S. § 36–187, is sufficient, as a matter of law, to support the authority of the County Health Department to issue licenses and assess fees.

## SEMIPUBLIC POOLS AND BATHING PLACES

Black Cloud next contends that the spa located at Village East Condominiums is private and therefore not subject to public health regulation. A.R.S. § 36–136(G)(14) provides only for regulation of public and semipublic pools and bathing places. We agree that if the spa here does not fall within the definition of "public" or "semipublic", that is, the spa is "private", then the County Health Department lacks authority to regulate its construction or use.

Since the legislature did not define the terms "public" and "semipublic" as used in A.R.S. § 36–136(G)(14), we must interpret these terms in light of the intent of the legislature. In ascertaining such intent, we look to the plain meaning of the words employed, the context in which they are used, the overall subject matter, the effects and consequences of different meanings, and the spirit and purpose of the legislation. *Apache East, Inc. v. Wiegand,* 119 Ariz. 308, 580 P.2d 769 (App.1978). In addition, although it is not conclusive, interpretation of a statute by an administrative agency charged with its implementation is entitled to great weight. *Marlar v. State,* 136 Ariz. 404, 666 P.2d 504 (App.1983); *McLeod v. Chilton,* 132 Ariz. 9, 643 P.2d 712 (App.1981), *cert. denied,* 459 U.S. 877, 103 S.Ct. 172, 74 L.Ed.2d 141 (1982).

The Arizona Department of Health Services defines a "public pool" as:

a swimming pool such as municipal, community, commercial, or cooperative, admission to which may be gained by the general public with or without payment of a fee.

A.C.R.R. R9–8–811(K) (Supp.1980).

The definition of a "semipublic pool" is:

a swimming pool on the premises of, or part of, a hotel, motel, trailer court, apartment house, country club, camp or similar establishment where the primary business of the establishment is not the operation of swimming facilities and where admission to the use of the pool is included in the fee, or consideration paid or given for the primary use of the premises.

A.C.R.R. R9–8–811(N) (Supp.1980).

Finally, a "private pool" is defined as:

a pool established or maintained on any premise by an individual for his own or his family's use, or for guests of his household.

A.C.R.R. R9–8–811(J) (Supp.1980).

The definitions of these terms in the regulations of the County Health Department are substantially similar to those quoted above, except that the County expressly includes pools at "condominiums" within the definition of a "semipublic pool."

Black Cloud maintains that regardless of these administrative definitions, the spa at the Village East Condominiums is private because it is privately owned by the individual condominium owners. The argument hinges on the fact that title to the common areas of the complex, including the spa, is held in fee by all of the condominium owners as tenants in common. In other words, Black Cloud contends that since the owners possess a freehold estate in the spa, it must therefore be private and not subject to public health regulations. Even if title to the spa is held jointly in fee by the condominium owners, we find Black Cloud's argument unpersuasive for in our opinion it is not how title to the spa is held, but rather how the spa is used that determines its public or semipublic characteristic.

It is apparent that A.R.S. § 36–136(G)(14) is designed to protect a class of users of pools and bathing places—those that come in contact with relative strangers in a water environment. It is pools that are frequently used by many persons with the attendant health hazards, such as the transmission of communicable diseases, toward which such legislation was directed.

The fact that the spa at the Village East Condominiums may be owned in fee by all the condominium owners does not change the semipublic nature of the communal spa or the legislative intent concerning the need for public health regulation at such places. The spa was installed to accommodate all 24 units of the complex and is not maintained for the use of any single individual or family. Given the nature and extent of the proposed use of the spa, it cannot be considered private in the traditional connotations of that word.

The fee ownership analysis argued by Black Cloud is also undercut by the fact that no individual condominium owner possesses an absolute right to use the spa. The recorded Declaration of Horizontal Property Regime and Declaration of Covenants, Conditions and Restrictions for the Village East Condominiums states that, appurtenant to each condominium unit, is a non-exclusive right and easement to use the common elements, including the spa, in common with all other authorized users. This easement is subject to certain rules and restrictions promulgated by the Board of Directors of the Condominium Association. One such restriction is the right of the Board to suspend the use of the recreational facilities from any condominium owner or occupant who fails to pay his or her share of the common expenses. These expenses are used to maintain the common areas including the spa.

As the trial court found, the fact that an owner may be precluded from using the spa brings the spa in question squarely within the administrative definition of a "semipublic" pool. Both the State and County Health Departments define semipublic pools to include pools at establish-

ments where the operation of the pool is secondary to the primary business of the establishment and where admission to the use of the pool is included in a fee paid for the primary use of the premises. Although we are not bound by this definition of a semipublic pool, we find that it is reasonable and should be applied in this case in light of the spirit and purpose embodied in the underlying statutory authority.

Other jurisdictions have reached similar conclusions. In *Lucas v. Hesperia Golf & Country Club*, 255 Cal.App.2d 241, 63 Cal. Rptr. 189 (1967), the California Court upheld the application of public health regulations dealing with lifeguards at pools to a swimming pool owned and operated by a private country club. In that case, the court stressed the fact that a pool may be "public" even though it is not open to the public at large. The nature and extent of the use of the pool, rather than its "private" ownership were deemed controlling. *See also Askew v. Parker*, 151 Cal.App.2d 759, 312 P.2d 342 (1957) (holding that a pool owned by a private religious organization was a "public pool" subject to public health regulation); *Commonwealth v. Apple Valley Racquet Club*, 20 Pa.Commw. 325, 342 A.2d 150 (1975) (concluding that a swimming pool owned and operated by a private club for the use of club members and their guests becomes "public" when members of the public at large may be admitted through private invitation); Annot. 87 A.L. R.3d 1032 (1978).

More recently, in *Hall Harbor Ass'n, Inc. v. Cape May County*, 196 N.J.Super. 533, 483 A.2d 445 (1984), the court was asked to decide whether the state swimming pool Code applied to a condominium association. After reviewing the decisions from other jurisdictions, which virtually all favor allowing public health regulation of pools at private clubs, hotels and motels, etc., the court concluded that the swimming pool Code was applicable to a condominium association.

In reaching its conclusion, the New Jersey court emphasized the remedial intent of the public health regulations. The court also distinguished the condominium pool from strictly private pools because the condominium pool in question was simply not maintained only for the use of an individual family and guests. The condominium pool was available to a large number of users and the public health legislation was precisely intended to cover that situation. Other important factors in reaching the result were the payment of a common fee by the owners for use of the pool, the ability of owners to rent their condominium units for indirect "profit," and the fact that condominium ownership does not lessen the dangers which the statute was designed to prevent.

Although these cases from other jurisdictions and the cases cited therein were primarily concerned with large swimming pools and not spas, we nonetheless find the reasoning behind those decisions relevant to this case. Given the underlying reasons for the regulation, we find that the term "semipublic pool or bathing place" as employed in A.R.S. § 36–136(G)(14) encompasses a spa located within the common area of a 24-unit condominium complex. Any other construction would defeat the intent of the legislature to protect the users of non-private pools and bathing places from the dangers of deleterious health conditions and water pollution.

## PHOENIX HEALTH ORDINANCES

■ Black Cloud's final contention is that regulation of spas by the County Health Department violates the City of Phoenix's health ordinances. The argument relies on certain provisions of a 1957 consolidation agreement pursuant to which the old health departments of the City of Phoenix and Maricopa County were merged or consolidated into the present Maricopa County Health Department. According to Black Cloud, the terms of the 1957 agreement limited the new, consolidated County Health Department to providing environmental sanitation services in Phoenix only as authorized by the 1951 Phoenix City Code. Black Cloud further maintains that the 1951 City Code provides no authoriza-

tion for regulating water pollution and deleterious health conditions at spas.

We find several flaws in the reasoning advanced by Black Cloud in this argument. To begin with, the 1951 Code has since been repealed and replaced with a new, more comprehensive Code. In addition, the actions of the County Health Department which Black Cloud now challenges have been authorized by statute as discussed earlier in this opinion.

Also, the consolidation agreement referred to by Black Cloud states that the County Health Department shall provide "[a] program of environmental sanitation based upon generally accepted programs and standards of sanitation in use in Health Departments throughout the United States." After reviewing the operation of the County Health Department with regard to the regulation of public and semipublic pools and bathing places, we conclude that such operation is a generally accepted environmental sanitation program in the United States. We need look no further than to our own Arizona Department of Health Services and its regulations affecting public and semipublic pools and bathing places to reach this conclusion. We find no material conflicts between the relevant environmental sanitation programs of the State and County Health Departments.

Finally, the 1951 Phoenix City Code would authorize the actions at issue here because of its broad language relating to public health. That Code vested in the city health officer the power to inspect all water and water supplies used within the city, and to perform all things necessary or proper to prevent its contamination. In addition, the city health officer was empowered to force the removal of public health hazards and sources of disease from public and private property at the owner's or occupant's expense. Therefore, even if the Maricopa County Health Department were limited by the provisions of the 1951 City of Phoenix Code, these provisions are broad enough to support the actions at issue in this lawsuit.

## CONCLUSION

In conclusion, we find that the statutory scheme in Arizona governing public health and safety, combined with the delegation agreement between the State and County Health Departments, provide sufficient authority for the County Health Department to define public and semipublic pools and bathing places, and to issue licenses and assess fees. Furthermore, we conclude that a spa located within the common area of a condominium complex is not a private spa. Instead, it is a semipublic bathing place as that term is used in A.R.S. § 36–136(G)(14) and the administrative regulations of the State and County Health Departments promulgated pursuant to that statute. Finally, the County Health Department's regulation of spas at condominium complexes violates neither the consolidation contract creating the Department nor the 1951 City of Phoenix Code referenced in that agreement.

Based upon the foregoing, the judgment of the trial court is affirmed.

GRANT, P.J., and OGG, J., concur.