113 N.J. Super. 173 (1971)
273 A.2d 372
FILOMENA C. RAPONOTTI, ADMINISTRATRIX AD PROSEQUENDUM OF THE ESTATE OF NICHOLAS RAPONOTTI, DECEASED, AND FILOMENA C. RAPONOTTI, GENERAL ADMINISTRATRIX OF THE ESTATE OF NICHOLAS RAPONOTTI, DECEASED, PLAINTIFF-APPELLANT,
v.
BURNT-MILL ARMS INC., A NEW JERSEY CORPORATION, AND PAPARONE & COMPANY, A NEW JERSEY CORPORATION, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 5, 1971.
Decided January 25, 1971.
*175 Before Judges KILKENNY, HALPERN and LANE.
Mr. Ira Rabkin argued the cause for appellant (Messrs. Molotsky, Rabkin & Gross, attorneys).
Mr. Arthur Montano argued the cause for respondents (Messrs. Kisselman, Devine, Deighan & Montano, attorneys).
The opinion of the court was delivered by HALPERN, J.A.D.
Plaintiff administratrix ad prosequendum and general administratrix of the estate of Nicholas Raponotti, deceased, appeals from a judgment of no cause for action entered on a jury verdict in favor of defendant Burnt-Mill Arms, Inc. The suit sought to recover money damages for the death by drowning of plaintiff's husband in a swimming pool owned and operated by defendant. A consent judgment of dismissal, with prejudice, was entered in favor of defendant Paparone & Company.
The essential facts are undisputed and will be summarized for an understanding of the issues involved. In 1966 defendant built and was the owner of a 112-family garden apartment complex in Voorhees Township, Camden County, New Jersey. Dolores Tarricone was one of its tenants. As part of the recreational facilities furnished to all tenants, defendant had installed an outdoor swimming pool 24 feet wide at the deep end, 35 feet wide at the shallow end, and about 50 feet in length, with a maximum depth at one end of 6 feet 4 inches. The pool did not contain a diving board. It was completely enclosed by a wire fence, except for a gate opening leading to the pool. A small building, designated as a recreation hall, was located outside of the gate and was provided by defendant for the tenants and their guests to be used in conjunction with the pool. The pool was illuminated *176 for night bathing with outdoor lights and underwater lights, and contained signs on or near the fence indicating the pool was "private" and "swim at your own risk."
The written regulations promulgated by defendant pertaining to the use of the pool, which were delivered to all tenants, and with which we are concerned, provided that the pool would be open daily until 11 P.M., except for Fridays and Saturdays when it would remain open until midnight. Each tenant was permitted to bring a maximum of four guests without prior approval by defendant. On prior arrangement with defendant a tenant could bring an unlimited number of guests for a special pool party; on such occasions the pool facilities could be used until 2 A.M. The defendant knew it was customary for the tenants and their guests to use the recreation hall, bring their own food, liquor and other beverages.
Admittedly, defendant never furnished a lifeguard for the pool or any appliances for lifesaving resuscitation. No separate charge was imposed for the use of the pool and its facilities beyond the rent charged. The owner controlled and maintained the pool.
On August 11, 1966 Dolores Tarricone, having reserved the pool for a party in accordance with defendant's regulations, was hostess to about 30 adult guests, including plaintiff's decedent, Nicholas Raponotti. Decedent was in good health and was an average swimmer. He participated in the festivities; he ate, drank and swam. The testimony of those witnesses present that night who were called to testify indicated that no one was intoxicated. Although there were guests in and around the pool who spoke with decedent about five or ten minutes before his body was discovered in the deep end of the pool, no one saw him enter the pool and no one knew what happened to him.
One of the guests recovered decedent's body from the pool and for about one-half hour various guests attempted artificial respiration. One of the guests testified, without objection, that a nurse who was present examined decedent and *177 detected a faint pulse; she then gave instructions on how to administer mouth-to-mouth resuscitation, which was also performed. An ambulance arrived within one-half hour after decedent's body was retrieved and oxygen was then administered. Decedent was dead on arrival at the hospital. An autopsy was performed. It is admitted that decedent died as the result of drowning and that he had .15% alcohol in his blood.
The complaint charged defendant with negligence in the operation of the pool in failing to provide a lifeguard and appliances or equipment for lifesaving and resuscitation. The trial was on the issue of liability only. The court submitted the following three interrogatories to the jury:

 INTERROGATORIES
 No. of No. of
 YESES NOES
 1. DO YOU FIND THAT THE
 DEFENDANT BURNT MILL
 ARMS, INC. WAS GUILTY
 OF NEGLIGENCE IN FAILING
 TO PROVIDE A LIFEGUARD
 TO BE PRESENT
 DURING THE PARTY? 2 10
 2. IF YOUR ANSWER TO THE
 ABOVE IS IN THE
 AFFIRMATIVE BY A VOTE
 OF 10 OR MORE, DO YOU
 FIND THAT SUCH NEGLIGENCE
 PROXIMATELY
 CAUSED THE DEATH OF
 DECEDENT?
 3. IF YOU FIND BY A VOTE
 OF 10 OR MORE THAT SUCH
 NEGLIGENCE PROXIMATELY
 CAUSED THE DEATH OF
 DECEDENT, THEN DO
 YOU FIND THAT THE
 DECEDENT WAS GUILTY OF
 CONTRIBUTORY NEGLIGENCE
 WHICH PROXIMATELY CONTRIBUTED
 TO HIS DEATH?

The jury answered the first interrogatory "No" by a 10-2 vote, and did not answer the remaining interrogatories. The *178 court then entered a judgment of no cause for action in defendant's favor. Plaintiff's motion for a new trial was denied, and this appeal followed.
The principal issue presented is whether the court erred in holding that the provisions of N.J.S.A. 26:4A-1 were inapplicable and in refusing to charge the jury in accordance therewith. The statute, which was enacted in 1946 but has never been directly construed in any reported opinion, provides:

Life-Saving Personnel and Appliances Required
Every person operating a swimming pool or public swimming place, directly or indirectly, for profit shall provide adequate trained personnel and proper appliances for life-saving and resuscitation at all times when the pool or place is open to the public.
The court held the statute inapplicable because it determined the pool involved here was a private pool as distinguished from a public pool. We have concluded the court placed too narrow a construction on the statute. Under the court's interpretation, the statute applied solely to operators of swimming pools or public swimming places who catered to the general public and made a separate monetary charge for the use of the facilities.
An inquiry into the objective of the Legislature is hazardous at best. Our function is to arrive at the legislative intent by considering the nature of the subject matter, giving the statutory words used their ordinary and primary meaning, and looking to the provisions of the whole law and not to a single sentence or member of a sentence in ascertaining its objective and policy. Richards v. United States, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); State v. Brown, 22 N.J. 405, 415 (1956); Kingsley v. Hawthorne Fabrics, Inc., 41 N.J. 521, 526 (1964); State v. Bander, 56 N.J. 196, 202 (1970). Viewed in that light, it becomes clear that the Legislature recognized the inherent danger to people who swim in pools or public swimming places where conceivably large numbers may congregate for that purpose. It sought to protect such people in situations *179 where the owner, directly or indirectly, operated the venture for profit. It therefore required such operators to "provide adequate trained personnel and proper appliances for life-saving and resuscitation" when the pool was in use. In construing the word "public" as used in N.J.S.A. 26:4A-1 it must be given a broad definition so as to include the people the Legislature intended to protect from dangers it considered inherent in this type of operation. As indicated in Askew v. Parker, 151 Cal. App.2d 759, 312 P.2d 342 (Cal. Ct. App. 1957):
A pool may be public although all persons do not have a right to be admitted, and a pool may be public even though certain persons can be legally excluded from it. Whether a charge is made for admission is not necessarily a determining factor. [at 345]
In the instant case 112 tenants and their guests had the privilege of using the pool. While it was highly improbable that all the tenants would make use of it at the same time, it was very probable that a good number of them would do so during the hot summer weather.
It would be naive for us to hold that defendant's tenants were not charged for the use of the pool and its facilities; such compensation was reflected in the rent charged. This is what the Legislature contemplated when it spoke of operating a swimming pool directly "or indirectly" for profit. The pool was part of defendant's over-all garden apartment operation from which its profits (or losses) were derived.
We agree with the views expressed in other jurisdictions that a swimming pool, for all practical purposes, may be a "public pool" even though no separate fee is charged for its use by guests or members and the general public is excluded. See annotations in 48 A.L.R.2d 104 (1956) and 1 A.L.R.3d 963-968 (1965); Rovegno v. San Jose Knights of Columbus Hall Assoc., 108 Cal. App. 591, 291 P. 848 (D. Ct. App. 1930) (a private club pool); Tucker v. Dixon, 144 Colo. 79, 355 P.2d 79 (Sup. Ct. 1960) (motel pool); Gordon v. Hotel Seville, Inc., 105 So.2d 175 (Fla. App. *180 1958), cert. den. 109 So.2d 767 (Sup. Ct. 1959) (hotel pool).
We construe N.J.S.A. 26:4A-1 to exclude from its provisions only such swimming pools or public swimming places maintained for use by a family and its guests. See Lucas v. Hesperia Golf & Country Club, 255 Cal. App.2d 241, 63 Cal. Rptr. 189 (D. Ct. App. 1967), where a comparable California statute was held applicable to a private country club and where a regulation of the state board of health made the statute applicable to swimming pools at apartment houses (among other categories).
In the instant case the court charged the jury that defendant owed the duty to decedent, an invitee, to exercise reasonable care for his safety, and that plaintiff had the burden of proving that the failure to have a lifeguard at the pool was actionable negligence. In general terms this charge conformed to the law set forth in Ross v. The Breakers, Inc., 134 N.J.L. 489 (E. & A. 1946); Gluckauf v. Pine Lake Beach Club, Inc., 78 N.J. Super. 8 (App. Div. 1963), and McLaughlin v. Rova Farms, Inc., 56 N.J. 288, 303 (1970). In none of the cited cases was N.J.S.A. 26:4A-1 mentioned or discussed.
Having determined that decedent was one of the class for whose benefit N.J.S.A. 26:4A-1 was enacted to establish a standard of conduct, the court should have instructed the jury that they could infer negligence from a violation of the statute if the breach thereof was the efficient or proximate cause of the accident. Evers v. Davis, 86 N.J.L. 196 (E. & A. 1914); Daniels v. Brunton, 9 N.J. Super. 294 (App. Div. 1950), aff'd 7 N.J. 102 (1951); Moore's Trucking Co. v. Gulf Tire & Supply Co., 18 N.J. Super. 467, 472 (App. Div. 1952), certif. den. 10 N.J. 22 (1952); Phillips v. Scrimente, 66 N.J. Super. 157, 163 (App. Div. 1961); Michaels v. Brookchester, Inc., 26 N.J. 379, 386 (1958); McCarthy v. Nat'l. Ass'n for Stock Car Auto Racing, Inc., 87 N.J. Super. 442 (Law Div. 1965), aff'd 90 N.J. Super. 574 (App. Div. 1966), aff'd 48 N.J. *181 539 (1967). The failure to charge in the manner indicated requires a reversal of the judgment and a remand for a new trial.
Since a new trial is mandated, we deem it advisable to discuss two other issues presented on this appeal which will probably reoccur at the new trial. In connection with the defense of contributory negligence, the court in its charge referred to the.15% alcohol in decedent's blood and charged the jury:
Now, there is a presumption in this matter which I think is applicable If there is, at the time, 0.15 per cent or more, by weight of alcohol in a person's body, it is presumed that person was under the influence of intoxicating liquor. This, Ladies and Gentlemen of the Jury, is a presumption. It is not a conclusive presumption. And with respect thereto, you say, what is a presumption. A presumption is a rebuttable assumption of fact resulting from a rule of law which required such fact to be assumed from any other fact or a group of facts found or otherwise established in the acts. That is a presumption. Now, wherever evidence is presented contrary to the presumed fact, that the existence or non existence of such a fact is for you to determine, members of the Jury, and the evidence which may be presented contrary to the presumed fact can be elicited during the cross examination of the witness who testified.
Therefore, in this case, from all the evidence that may have been presented during the course of this trial with respect to the presumed fact of intoxication by reason of the alcoholic content in the blood stream of the decedent, is for your determination, and you shall decide whether that presumed fact exists or does not exist, concerning the fact that the decedent in this matter was under the influence of intoxicating liquor.
The court was obviously referring to the presumption drawn in prosecutions for drunken driving in violation of N.J.S.A. 39:4-50.1(3) in effect when this incident occurred. This statutory presumption is applicable only to prosecutions under N.J.S.A. 39:4-50 et seq., and not in civil suits for damages based on negligence. This charge should not be repeated at the retrial. See Carroll v. Houtz, 93 N.J. Super. 215, 224 (App. Div. 1966).
Finally, plaintiff contends the court should have admitted into evidence section 14.2 of the Swimming Pool Code, *182 adopted in 1955 (amended 1970) by the New Jersey State Department of Health and which provided:
Lifeguards  at least one (1) senior lifeguard shall be on duty at all times who holds as a minimum, a valid Senior Lifeguard Certificate issued by the American Red Cross, or Y.M.C.A. or other equivalent rating. Other lifeguards required to be present and on duty while the pool is open for business shall be based primarily upon the number of patrons present at any time.
In connection with this issue it is significant that N.J.S.A. 26:4A-2 authorizes "The State Department of Health [to] establish reasonable rules and regulations to carry out the provisions of this act." Such was done in 1955 when the State Department of Health adopted "The New Jersey Swimming Code." It, in turn, suggested that local boards of health adopt the code in full, as authorized by N.J.S.A. 26:3-69.1 to 69.6. Admittedly, the board of health of Voorhees Township had not adopted the state code as of the date of decedent's death. The court determined that the state code was not a "safety code" and therefore not admissible.
Plaintiff's expert, Timothy Wade, testified that good safety practice required a competent lifeguard to be on duty at defendant's pool. We have concluded that the New Jersey Swimming Code, among other things, is a "safety code" since it purports to establish and suggest various standards for the operation of swimming pools coming within the purview of N.J.S.A. 26:4A-1, and was prepared by the State Department of Health authorized by law "to establish reasonable rules and regulations to carry out the provisions of this act." N.J.S.A. 26:4A-2. When promulgated such rules and regulations are presumed reasonable and valid. McCormick, Evidence § 309, at 641 (1954). As indicated by Justice Brandeis in Thompson v. Consolidated Gas Utilities Corp., 300 U.S. 55, 69, 57 S.Ct. 364, 371, 81 L.Ed. 510 (1936). "It is settled that to all administrative regulations purporting to be made under authority legally *183 delegated there attaches a presumption of the existence of facts justifying the specific exercise." Thus, such regulations are some evidence of the proper standard of care. See annotation in 75 A.L.R.2d 778 (1961); Swank v. Halivopoulos, 108 N.J. Super. 120, 126-127 (App. Div. 1969), certif. den. 55 N.J. 444 (1970); Steffes v. Farmers Mutual Auto Ins. Co., 7 Wis.2d 321, 96 N.W.2d 501, 508 (Sup. Ct. 1959). At the retrial, if the appropriate foundation is laid through expert testimony, the relevant portions of the state code should be admitted in evidence to corroborate the expert's opinion. McComish v. De Soi, 42 N.J. 274, 282 (1964); Foutch, "Admissibility of safety codes, rules and standards in negligence cases," 37 Tenn. L. Rev. 581 (1970).
We point out, without commenting thereon, that the state code in defining the term "swimming pool," excludes pools maintained for use by individual families and their guests. We note this because of what we said in interpreting the applicability of N.J.S.A. 26:4A-1 to defendant, and the holding in Lucas v. Hesperia Golf & Country Club, supra.
One issue occurs to us which should be mentioned, although it was not raised by either of the parties and was not argued on the appeal. The interrogatory submitted merely asked the jury to determine whether defendant was negligent in failing to provide a lifeguard. When the jury answered the inquiry in the negative the court entered a judgment of no cause for action based solely on that answer. It seems to us that the jury may have determined, if given an opportunity to do so, that defendant was negligent in some other regard  e.g., not having essential lifesaving equipment. On the retrial, if interrogatories are submitted to the jury, they should be so worded that the ultimate issues are fully answered, so as to enable the trial judge to properly enter judgment.
Reversed and remanded for a new trial.