STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
WOODLANDS CONDOMINIUM ASSOCIATION,
DEFENDANT-APPELLEE.

Superior Court of New Jersey
Law Division (Criminal)
Middlesex County

Decided February 22, 1985.

*Douglas K. Wolfson* and *Sharon L. Levine* for defendant (*Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein,* attorneys).

*Lawrence P. Pollex* for plaintiff (*Peter A. DeSarno,* attorney).

HAMLIN, J.S.C.

This is a *de novo* appeal from a determination by the Edison Township Municipal Court. It presents two questions of first impression: the right of the State to appeal an adverse determination by the municipal court pursuant to *R.* 2:3–1 and the applicability of *N.J.S.A.* 26:4A–1 *et seq.* to swimming pools operated and used solely by condominium owners and their invited guests within the context of a quasi-criminal prosecution in the municipal courts.

■ The procedural history is significant. On June 29, 1984 an officer of the Edison Health Department issued two summons to the Woodlands Condominium Association. One summons charged violation of sections 14 (provision of life guards) and 15 (bacteriological testing) of the 1955 swimming pool code of New Jersey, *N.J.S.A.* 26:4A–1 *et seq.* adopted by Edison as municipal ordinance article XXII, section 36–223. The second summons charged violation of article XXXI, section 36–296, failure to obtain a license. Although the township attorney entitled the papers on this appeal as a "civil action" it is clear that is not the case as conceded at argument. The form of summons is entitled "complaint, non-indictable offense" and requires the issuing officer to state that he has "reasonable

grounds to believe" that defendant "committed the offense." Defendant was summoned to appear in the municipal court on July 16, 1984. That court has no civil jurisdiction, *N.J.S.A.* 2A:8–21, *R.* 7:1, but it may impose criminal sanctions such as fines as set forth by penal statutes. In that proceeding the State had the burden of proof beyond a reasonable doubt and the court was limited to verdicts of dismissal, not guilty or guilty. *R.* 7:4–6. The action was quasi-criminal in nature with all inherent constitutional guarantees that attach to such proceedings. *State v. Labato,* 7 *N.J.* 137 (1951).

██ Defendant association entered a plea of not guilty and appeared by counsel at the trial on November 5, 1984. During colloquy counsel for defendant urged dismissal upon *res judicata* based upon an acquittal a year previously charging the same defendant with violation of the same ordinances. While there was no specific ruling on the application, it is clear that the municipal court judge did not accept the argument. In the absence of an appeal of a pretrial motion addressed to the Superior Court such action was appropriate. *R.* 7:4–2(e) and *R.* 3:24. The same may also be said in regard to defendant's argument that the State's adoption of a new swimming pool code in 1970 vitiated Edison's attempt to enforce 1955 standards subsequent to that legislative act. The State and defendant entered into certain stipulations:

1. The defendant is a not for profit corporation which operates but does not own the subject pool;

2. Woodlands Condominiums consist of 37 units with a common area, including the pool, owned in common by the owners of said units *N.J.S.A.* 46:8B–3(d) and *N.J.S.A.* 46:8B–6;

3. The pool is open to the common owners and their invited guests only. No admission or other charge is made for use of the pool. The public at large is not admitted;

4. Neither the association or the individual owners had obtained a license, hired a life guard or complied with the testing requirements of the ordinance.

The State presented no other evidence. Defendant produced an officer of the association who testified that all condominium units were owner-occupied and that there were no leases or

rental tenancies. The court reserved decision until November 26, 1984 when it rendered a verdict of "not guilty" without opinion. The State did not seek a statement of reasons or clarification of the verdict as provided by court rules. *R.* 1:7–4; *State v. Hintenberger,* 41 *N.J.Super.* 597 (App.Div.1956), certif. den. 23 *N.J.* 57 (1956). The township attorney filed a notice of appeal and the matter was heard on January 11, 1985. The case is here both on the merits and defendant's motion to dismiss on several grounds:

 1. double jeopardy,

 2. *res judicata* and

 3. invalidity of the 1955 code standards subsequent to the adoption of the 1970 act.

■ In regard to defendant's motion it is beyond serious question that the proceedings below were quasi-criminal in nature and the State's right to appeal is governed by *R.* 2:3–1 which reads in pertinent part:

 In any criminal action the State may where appropriate or when appropriate seek leave to appeal pursuant to *R.* 2:5–6(a).

 . . . .

 (b) to the appropriate Appellate Court from: (1) a judgment of the trial court dismissing an indictment, accusation or complaint, when not precluded by the Constitution of the United States or of New Jersey. . . .

The comment to the rule makes it clear that the rule is to be read strictly and that orders not expressly included by the rule may not be appealed by the State. *State v. Gadson,* 148 *N.J.Super.* 457 (App.Div.1977). The State concedes the applicability of the rule but argues that the verdict below must be construed as an order of dismissal and thus an appeal would not be constitutionally barred. *United States v. Scott,* 437 *U.S.* 82, 98 *S.Ct.* 2187, 57 *L.Ed.*2d 65 (1978); *State v. Barnes,* 84 *N.J.* 362 (1980); *State v. Langanella,* 144 *N.J.Super.* 268 (App.Div. 1976), app. dism. 74 *N.J.* 256 (1977).

■ In the absence of an order of dismissal or a written opinion which could have been sought, *R.* 1:7–4, the State may not nor may any reviewing court reverse those legal determinations resolved in the defendant's favor and resulting in an

acquittal. *Paramus v. Martin Paint,* 128 *N.J.Super.* 138 (App.Div.1974); *State v. McKelvey,* 142 *N.J.Super.* 259 (App. Div.1976). In order to sustain the State's position this court would have to interpret the "not guilty" verdict below based upon *its* view of the record and determine the significance of elements of proof to the original finder of fact. There is no authority for such review and it is specifically barred as a form of double jeopardy. *State v. Dixon,* 40 *N.J.* 180 (1963); *State v. O'Keefe,* 135 *N.J.Super.* 430 (Law Div.1975). The logic of the bar is easily demonstrated. If the finder of fact were a jury, could the State appeal urging *its* view that the verdict was based upon erroneous legal assumptions? No. It is a cornerstone of Anglo-American jurisprudence that a "not guilty" *verdict* by jury or judge may not be set aside by some internal analysis of the evidence to determine the basis for such verdict. In the instant case there was a stipulation, sworn testimony and a bare verdict of "not guilty." This court may not conjecture or speculate as to the basis of the verdict. Defendant's motion for dismissal based on double jeopardy is granted.

In view of the court's ruling it is not necessary to reach the issues of *res judicata* or statutory supersession. In the event that an appellate court disagrees with the ruling on the motion this court, as a matter of efficiency, must deal with the merits of the issue on appeal.

■ Does *N.J.S.A.* 26:4A–1 *et seq.* permit quasi-criminal prosecution of owner-occupied condominium association pools where the public at large is not admitted? No.

■ Edison Township, pursuant to *N.J.S.A.* 26:3–69.2, adopted the provisions of *N.J.S.A.* 26:4A–1 *et seq.* and in so doing was exercising police powers in regard to public health, *Zullo v. Board of Health,* 9 *N.J.* 431 (1952), within the limits of the powers provided by such legislation. *Jones v. Buford,* 71 *N.J.* 433 (1976). *N.J.S.A.* 26:4A–1 provides:

Every person operating a swimming pool or public swimming place, directly or indirectly, for profit, shall provide adequate trained personnel and proper

appliances for life-saving and resuscitation at all times when the pool or place is open to the public.

Section 1.1 defines the term swimming pool and excludes certain pools without further comment or clarification:

... It shall not include swimming or wading pools established or maintained upon any premises by any individual for his own or his family's use or guests of his household.

Defendant asserts that by virtue of its member-ownerships and admission limited to household guests it falls within the exclusion and further that there is no direct or indirect profit upon which *N.J.S.A.* 26:4A–1 can rest.

Apart from statute precedent has arisen only in civil actions. In *Rapanotti v. Burnt-Mill Arms, Inc.*, 113 *N.J.Super.* 173 (App.Div.1971) the court dealt with the statute in reviewing a jury charge in a negligence case. In that context the court said:

... [I]t becomes clear that the Legislature recognized the inherent danger to people who swim in pools or public swimming places where conceivably large numbers may congregate for that purpose. It sought to protect such people in situations where *the owner directly or indirectly operated the venture for profit.* [at 178–179; emphasis supplied]

The court there applied the test to a garden apartment complex of 112 units and determined that while no separate admission fee was charged for the use of the pool the charge was reflected in rentals and inured to the owner's profit.

The only other reported decision is by the Law Division arising out of a declaratory judgment action. *Hall Harbor Ass'n. Inc. v. Cape May County*, 196 *N.J.Super.* 533 (Law Div.1984). That case dealt with a 60-unit condominium where members of the association leased their units to tenants and charged rentals. In considering the applicability of the statute the court there found sufficient "conceivably large numbers" of users and the indirect profit to the leasing owners.

All of the condominium unit owners have a share in the ownership of the pool. They pay for its use through individual contributions to the maintenance fee charged by the association. When they lease their units, the gain they realize is in part, a reflection of the attractiveness of the condominium complex of which the pool is a part. [at 538]

Given the exclusionary definition of section 1.1 as to use by pool owners and guests of their households the finding of a "venture" operated for profit, direct or indirect, is a *sine qua non* to apply the statute. This is especially true in a quasi-criminal proceeding. Clearly the statutory scheme could be better effectuated by defining regulated pools by size or use rather than by ownership or profit motive. Notwithstanding that facile judicial hindsight, the court must act according to the language of the statute. On the facts here it is unrebutted that pool use is limited to owners and guests of their households. The fact that there are several owners rather than one is not logically significant to the language of the statute. Even reading in the element of "conceivably large numbers" is of little assistance. *Rapanotti* dealt with a complex triple the size of this defendant. *Hall Harbor* dealt with a complex almost double the size of this defendant. At what point does a pool owner cater to "conceivably large numbers": at 112 units, 60 units or 37 units? Or fewer? If two abutting families share a pool, do those property owners fall into a prohibited area and become subject to quasi-criminal prosecution? What if each family has ten children and weekend parties with 50 guests? To pose the question is to demonstrate the fallacy. The State here argues that *Rapanotti's* approval of *Lucas v. Hisperia Golf and Country Club,* 255 Cal.App.2d 241, 63 Cal.Rptr. 189 (1967) means to imply that the statute applies when the pool admits "an ill defined number of persons." Suffice it to say that such standard has not been adopted although such an element of proof (ill defined numbers) would present an interesting, if not curious, standard in a quasi-criminal proceeding.

The instant case, unlike *Rapanotti* or *Hall Harbor* has no element of rental and thus no direct or indirect profit. The named defendant association is not an owner and gains no equity or profit from the pool or its use. Mere accrual of equity for possible resale by individual owners is insufficient to satisfy the profit requirements of *N.J.S.A.* 26:4A–1. There is no "profit venture" here as required by *Rapanotti.* This court

holds that where a not-for-profit condominium association administers a pool owned in common by its sole users and their invited guests it does not fall within the statutory purview and here, after trial *de novo,* a judgment of acquittal must be entered.

 It should be noted that the State here chose to prosecute in the municipal court thus imposing upon itself additional burdens, both in procedural safeguards and standard of proof. *State v. Weir,* 183 *N.J.Super.* 237 (App.Div.1982). Having so chosen they cannot now seek to be relieved of those burdens.